THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GENNARO BONIFACE and DAVID BRANSON, Appellants.— Appeals from two judgments of the Supreme Court, Queens County, both rendered October 19, 1970, one convicting defendant Boniface of attempted possession of a dangerous drug in the fourth degree, and the other convicting defendant Branson of possession of a dangerous drug in the sixth degree, both upon guilty pleas. The appeals bring up for review the denial of defendants' pretrial motions to suppress evidence. Case remitted to the Criminal Term for a further hearing on the motion to suppress and determination of the appeals held in abeyance in the interim. Defendants were arrested at the John F. Kennedy International Airport by detectives on the staff of the Queens County District Attorney's Office on the basis of information received from an undisclosed informant, which information was transmitted to them by Arthur Rohr, a Special Agent with the Bureau of Customs of the Treasury Department. We specifically affirm the Criminal Term's finding that the search in question followed the arrest of defendants (cf. *Henry* v. *United States*, 361 F. 2d 352). At the suppression hearing Rohr testified he received information from an informant, whose information had previously proven reliable, that defendant Boniface would arrive in New York in about 45 minutes on a flight from California; that Boniface would have in his possession two suitcases containing large quantities of marijuana; that he would be met by " some people "; and that Boniface was between 30 and 35 years of age, weighed about 180 pounds, and had a Fu Manchu mustache and shaved head. On cross-examination Rohr refused to divulge the details of the previous cases in which the informant's information had proven reliable. Detective Eaton, one of the arresting officers, testified that Rohr had transmitted the above information to him and had further told him that upon his arrival Boniface would be

wearing a Russian hat and would be picked up in a Mustang automobile. Eaton went to the airport and corroborated the information. He observed defendant Boniface in the company of four other men. Boniface picked up two suitcases at the airline luggage counter and he and defendant Branson each carried one of them to a waiting Volkswagen automobile. The five men were arrested as the suitcases were being loaded into the vehicle. A search of the vehicle revealed a large quantity of marijuana. The analysis of an arrest by police without a warrant is basically the same as that demanded of a Magistrate in passing upon the sufficiency of an application for a search warrant (*Spinelli* v. *United States,* 393 U. S. 410, 417, n. 5). The precise nature and great detail of the information given by the informant here is similar to the information given by the informant in *Draper* v. *United States* (358 U. S. 307). The detailed nature of the information satisfied the requirement that there be proof of some underlying circumstances to establish the credibility of the information (*Spinelli* v. *United States, supra,* pp. 416–417; cf. *Aguilar* v. *Texas,* 378 U. S. 108, 114). Similarly, the corroboration of the details of the tip by the officers' independent observations of Boniface's seemingly innocent conduct establishes the informant's reliability, in view of the nature of the tip (see *Spinelli* v. *United States, supra,* pp. 417–418). We do not believe that the difference in the make of the automobile impeached the reliability of the informant, as it was not a significant item. The tip was corroborated in every other detail. These observations of nonsuspicious conduct could not have established the informant's reliability had the tip merely been conclusory in form and devoid of the particularity here present (see *People* v. *Corrado,* 22 N Y 2d 308; cf. *People* v. *Valentine,* 17 N Y 2d 128). We differ with the Criminal Term's finding that the informant's reliability was established by Rohr's statements as to past reliability, in view of Rohr's refusal to answer questions about the names of the prior cases in which the informant's reliability was allegedly established and their nature. While the officer's conclusory statements as to the informant's past reliability may be sufficient in an affidavit in support of an application for a search warrant (see *People* v. *Hendricks,* 25 N Y 2d 129; *People* v. *Cerrato,* 24 N Y 2d 1; *People* v. *Schnitzler,* 18 N Y 2d 457), more detail is required in a hearing on a suppression motion in which the validity of a warrantless search is at issue (cf. *McCray* v. *Illinois,* 386 U. S. 300). Our finding of probable cause to support the arrest does not provide an answer to the question whether disclosure of the informant's name was required in the interests of a fair trial (cf. *People* v. *Cerrato, supra,* pp. 5–6). Here, as in *People* v. *Malinsky* (15 N Y 2d 86), the showing of probable cause depended solely upon the testimony of a law enforcement officer as to communications received from an avowed informer. Hence, on the present record, disclosure is required. The People may, on the further hearing, disclose the informant's identity, offer sufficient evidence of probable cause apart from the informant's communications, or otherwise substantiate Rohr's testimony that he received information from a reliable informant (cf. *People* v. *Coffey,* 12 N Y 2d 443; *People* v. *Malinsky, supra*). Martuscello, Shapiro and Christ, JJ., concur; Munder, Acting P. J., and Latham J., dissent and vote to affirm the judgments.